IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION

| | |
|---|---|
| LACEY J. HARRIS,<br><br>        Plaintiff,<br><br>  vs.<br><br>DAKIS LEGAL GROUP, LLC,<br><br>        Defendant. | Civil Action No.:<br>2:25-CV-00170-CCW-CBB<br><br>Christy Criswell Wiegand<br>United States District Judge<br><br>Christopher B. Brown<br>United States Magistrate Judge |

**REPORT AND RECOMMENDATION
ON MOTION FOR DEFAULT JUDGMENT ECF Nos. 41 and 48**

**Christopher B. Brown, United States Magistrate Judge**

I.      Recommendation

This civil action was initiated by Plaintiff Lacey J. Harris against Defendant Dakis Legal Group, LLC d/b/a Clear Creek Legal ("Dakis"). Harris alleges Dakis failed to perform various debt relief and credit repair services it agreed to provide as well as violated several federal and state laws related to credit repair services and consumer protection. ECF No. 26. The Court has subject matter jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367.

Presently pending before the Court is a motion for default judgment by Harris. ECF Nos. 41 and 48 (amended to include updated attorneys' fees).

For the reasons that follow, it is respectfully recommended that the Court grant Harris's motion for default judgment and enter the Judgment Order set forth below against Defendant Dakis.

1

II.    **Report**

    **a. Background**

In or around 2023, Harris entered into an agreement with Defendant Dakis to perform debt negotiation and credit improvement services for her. ECF No. 26 at ¶ 20. As part of this process, Dakis informed Harris that her debts would be consolidated into a single, lower monthly payment and Harris would make payments to Dakis who would in turn negotiate with Harris's creditor to reach settlements for her debt. *Id.* at ¶ 16. A Dakis representative told Harris to stop paying her creditors and to divert those funds to Dakis for its services, which she did, paying Dakis an amount of $594.83 per month. *Id.* at ¶¶ 21-24. Harris was charged an up-front "legal retainer" fee of $995 for purported legal services, which was taken out of her monthly payments at $100 increments and was charged a monthly "legal administration fee" of $99 for services related to "participation in creditor negotiations" and "litigation defense services." *Id.* at ¶¶ 28-29. On top of these fees, Harris was charged $302.50 for "service costs" which Dakis described as "implementation, management and maintenance of Harris's debt negotiation plan" and a $10.95 monthly unspecified "account fee." *Id.* at ¶¶ 30-31. Given the significant fees charged by Dakis, from the monthly $594.83 payment, Harris only deposited $81.55 per month into her account to negotiate her debt. *Id.* at ¶ 31.

Harris maintained these monthly payments for over a year, but Dakis failed to resolve any of Harris's enrolled debt obligations. *Id.* at ¶¶ 33-34. This led to

Harris being sued by one of her creditors involved in the program, and while Dakis claimed it would defend Harris in that lawsuit, it did not do so. *Id.* at ¶¶ 40-41.

In April 2024, Dakis informed Harris that it was changing its fee structure, which Harris claims was done in an effort to avoid further liability. *Id.* at at ¶¶ 37-38. Harris further claims this was as a result of Dakis being named as a non-party "façade firm" in ongoing Consumer Financial Protection Bureau litigation against an associated entity, Strategic Financial Services, LLC, ("SFS") related to unlawful upfront fees SFS and Dakis were charging its customers. *Id.* Dakis did not apply the fee structure changes retroactively to Harris's account and failed to resolve any of the three accounts in the program. *Id.* at ¶¶ 39, 42-43. Harris then canceled her agreement in the fall of 2024 and initiated this lawsuit. *Id.* at ¶ 44.

Harris asserts causes of action for, *inter alia*, violations of (1) the Federal Credit Report Organizations Act, 15 U.S.C. § 1679b ("CROA"); (2) the Virginia Credit Services Businesses Act, Va. Code § 59.1-335.2 ("VCSBA"); (3) the Pennsylvania Credit Services Act 73 P.S. § 2183 ("PCSA"); (4) the Virginia Consumer Protection Act Va. Code. § 59.1-196 *et seq.*, ("VCPA"); and (5) Pennsylvania Unfair Trade Practices and Consumer Protection Law 73 P.S. § 201-1 *et seq.* ("PUTPCPL") *Id.* at ¶¶ 50-113.

Dakis was originally represented by counsel in this case, but counsel was later permitted to withdraw representation and Dakis was ordered to retain counsel by August 29, 2025. ECF Nos. 34, 36. It did not do so and has not otherwise participated or appeared in this case since counsel withdrew in July 2025. Default

3

was entered against Dakis and the present motion for default judgment followed. ECF Nos. 40, 41, 48. A default judgment hearing was held on December 9, 2025 and Dakis failed to appear. ECF No. 47.

### b. Standard of Review

Federal Rule of Civil Procedure 55(b)(2) provides that a district court may enter default judgment against a party when a default has been entered by the Clerk of Court. Entry of default judgment is a matter within the sound discretion of the district court. *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984). In determining whether to grant a default judgment, courts examine three factors: 1) prejudice to the plaintiff if default is denied; 2) whether the defendant appears to have a litigable defense; and 3) whether the defendant's delay is due to culpable conduct. *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000) ("*Chamberlain* factors"). "When a defendant fails to appear," however, "the district court or its clerk is authorized to enter a default judgment based solely on the fact that the default has occurred." *Anchorage Assocs. v. Virgin Islands Bd. of Tax Rev.*, 922 F.2d 168, 177 n.9 (3d Cir. 1990).

The court must determine "whether the unchallenged facts constitute a legitimate cause of action." *Joe Hand Promotions, Inc. v. Yakubets*, 3 F. Supp. 3d 261, 270 (E.D. Pa. 2014) (citing 10A Charles Alan Wright, Arthur R. Miller, et al., Federal Practice and Procedure § 2688). Upon entry of default, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990). The

court need not accept the moving party's legal conclusions. *Id.* If the plaintiff asserts a legitimate cause of action, the court must then determine appropriate damages. *Id.* "When a plaintiff prevails by default, he or she is not automatically entitled to the damages they originally demanded." *Rainey v. Diamond State Port Corp.*, 354 F. App'x 722, 724 (3d Cir. 2009). Rather, "defaults are treated as admissions of the facts alleged, but a plaintiff may still be required to prove that he or she is entitled to the damages sought." *Id.*

### c. Discussion

#### i. Legitimate Causes of Action

Dakis has failed to appear in this matter since counsel was permitted to withdraw and default judgment is appropriate without further consideration of the *Chamberlain* factors.

Harris has likewise established legitimate claims for violations of CROA, VCSBA, PCSA, VCPA and PUTPCPL.

CROA prohibits any person from making or using "any untrue or misleading representation of the services of the credit repair organization" or engaging in any fraudulent or deceptive conduct "in connection with the offer or sale of the services of a credit repair organization." 15 U.S.C. § 1679b(a)(3); 15 U.S.C. § 1679b(a)(4). It further prohibits any credit repair organization from charging or receiving any money for agreed upon services until the service is "fully performed." 15 U.S.C. § 1679b(b). The VCSBA and the PCSA prohibit the same conduct. *See* Va. Code. § 59.1-335.5-1 (prohibits credit repair services from charging or receiving money for

services prior to complete performance of services); 73 P.S. § 2183(1) (same); Va. Code § 59.1-335.5-4 (prohibits false or misleading representations in the offer or sale of credit repair services); 73 P.S. § 2183(4) (same).  Accepting Harris's allegations as true, she claims Dakis presented itself as a credit repair organization and represented to her that it would negotiate down her debt, defend her in any credit-related legal action and improve her credit score.  Harris claims Dakis did none of the above and charged Harris for fees it did not incur for services it did not perform which establishes legitimate claims under CROA, the VCSBA and the PCSA.

The PUTPCPL is Pennsylvania's consumer protection law which seeks to prevent unfair or deceptive acts or practices in the conduct of any trade or commerce and requires a plaintiff to show that she justifiably relied on the defendant's wrongful conduct or representation and suffered harm as a result of that reliance. *Weiss v. Fritch, Inc.*, 2018 WL 1940109, at *7 (Pa. Super. Ct. 2018). The VCPA prohibits a supplier from using "deception, fraud, false pretense, or misrepresentation in connection with a consumer transaction." Va. Code § 59.1-200(A)(14) (defining "consumer transaction" as *inter alia*, offering services for sale used "primarily for personal . . . purposes.").  Harris claims Dakis promised to provide her with credit repair and negotiation services, including defending her in any credit-related lawsuit, she stopped paying her creditors and made monthly payments for approximately a year to Dakis, and Dakis performed no such services

6

while charging Harris for fees it did not incur.  These allegations establish legitimate PUTPCPL and VCPA claims.

### ii. Damages

Harris seeks actual damages in the amount of $9,517.28 as permitted by CROA, the VCSBA, the PCSA, the PUTPCPL and the VCPA[1] which represents the amount of all payments she paid into her Global Holding account which was set up by Dakis to collect its costs and fees and submitted proof of those payments. *See* ECF No. 48-3.  Thus, Harris has established by a preponderance of the evidence that she has incurred actual damages in the amount of $9,517.28.

Harris also seeks punitive damages in the amount of $10,000 as permitted by CROA, the VCSBA, and the PCSA.[2]  With respect to an award of punitive damages under CROA, the Court must consider "(1) the frequency and persistence of noncompliance by the credit repair organization; (2) the nature of the noncompliance; [and] (3) the extent to which such noncompliance was intentional[.]" 15 U.S.C.A. § 1679g(b).  Accepting Harris's allegations as true, she claims Dakis presented itself as a credit repair organization and represented to her that it would negotiate down her debt, defend her in any credit-related legal action and improve her credit score.  Harris claims Dakis did none of the above and charged Harris for fees it did not incur for services it did not perform.  Further, Dakis amended its fee

---

[1]   *See* 15 U.S.C. § 1679g(a)(1), Va. Code. § 59.1-335.10, Va. Code. § 59.1-204, Va. Code. § 6.2-2048, 73 P.S. § 2191, and 73 P.S. § 201-9.2(a).

[2]   *See* 15 U.S.C. § 1679g(a)(2)(A), Va. Code § 59.1-335.10, and 73 P.S. § 2191.

7

structure to shield itself from liability but did not apply those changes retroactively and instead kept the unincurred fees. These allegations establish intentional and persistent noncompliance of CROA throughout the entire relationship between Harris and Dakis. Thus, Harris has established by a preponderance of the evidence that she is entitled to punitive damages in the amount of $10,000.

Accordingly, accounting for the actual damages and punitive damages, it is recommended that the Court award Harris damages in the amount of **$19,517.28**.

Finally, Harris seeks $5,266.80 in reasonable attorneys' fees and costs as permitted by CROA, the VCSBA, the PCSA, the PUTPCPL and the VCPA.[3] Harris seeks $516.80 in costs and $4,750 in attorneys' fees which reflect an hourly rate of $375 for attorney review and $125 for paralegal review. These costs and fees are reasonable and should be awarded. ECF No. 48-1.

### III. Conclusion

Based on the undisputed facts and evidence presented, it is respectfully recommended that the Court grant Harris's motion for default judgment and enter the following Order:

AND NOW, after consideration of the foregoing motion for default judgment filed by Plaintiff Lacey J. Harris, it is hereby ORDERED that said motion is GRANTED.

---

[3] *See* 15 U.S.C. § 1679g(a)(3), Va. Code §§ 59.1- 335.12(A) & 59.1-204(B), Va. Code § 6.2- 2048, Va. Code § 59.1-204 and 73 P.S. § 2191.

IT IS FURTHER ORDERED that Judgment by Default is hereby entered against Defendant DAKIS LEGAL GROUP, LLC, d/b/a CLEAR CREEK LEGAL as follows:

1. A final judgment is entered in favor of Plaintiff and against Defendant Dakis Legal Group in the amount of $19,517.28;

2. Plaintiff shall be awarded post-judgment interest at the applicable statutory rate against Defendant Dakis Legal Group from the date the judgment is entered; and

3. Plaintiff is awarded attorneys' fees and costs against Defendant Dakis Legal Group in the amount of $5,266.80.

### IV.  Notice

Therefore, pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), Federal Rule of Civil Procedure 72, and the Local Rules for Magistrates, the parties have until **January 6, 2026** to object to this report and recommendation. Unless otherwise ordered by the District Judge, responses to objections are due fourteen days after the service of the objections. Failure to file timely objections will waive any appellate rights. *Brightwell v. Lehman*, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

Dated: December 23, 2025                                  Respectfully submitted,
                                                          s/ Christopher B. Brown
                                                          United States Magistrate Judge


cc:    Honorable Christy Criswell Wiegand
       United States District Judge
       *via electronic filing*